### In re BROOME'S MEN'S SHOP.
### No. 4405.

United States District Court
E. D. South Carolina,
Columbia Division.

Dec. 6, 1949.

Charles F. Cooper, Columbia, S. C., for Perpetual Building & Loan Ass'n and Mutual Savings & Loan Ass'n, claimants.

John E. Edens, Edward M. Woodward, Columbia, S. C., for trustee in bankruptcy.

TIMMERMAN, District Judge.

Petitions for review of the Referee's order of April 21, 1949, are before the Court for consideration. Mutual Savings and Loan Association, hereinafter referred to as Mutual, filed a secured claim in the amount of $4,000 against the estate of the above named bankrupt; and Perpetual Building and Loan Association, hereinafter referred to as Perpetual, also filed a like character of claim for $5,800 against said estate. Each claim, purportedly, was secured by

a mortgage covering all the assets of the bankrupt. Mutual's note and mortgage bore date May 5, 1947, and Perpetual's May 20, 1947. Neither mortgage was recorded until November 20, 1947, six months after the date of the latter. The Referee allowed both claims as unsecured debts of the bankrupt, but disallowed them as secured claims, since the recordation date of each mortgage was within the four months next preceding the filing of the petition in bankruptcy.

Mutual and Perpetual complain that the Referee erred in disallowing their claims as secured debts of the bankrupt; and the Trustee complains that the Referee erred in not disallowing the claims as unsecured debts. In other words, the Trustee contends that neither claim represents a debt of the bankrupt.

It is concluded that the Referee was right in disallowing the claims as secured debts. Also that he was right in allowing Mutual's $4,000 claim as an unsecured debt, but that he was in error in allowing Perpetual's claim of $5,800 even as an unsecured debt.

The record is voluminous and replete with surmises, conjectures, hearsay, equivocations and unsubstantiated claims and contentions. The business venture, out of which this matter arose, was started, with inadequate capital, about the last day of January, 1947, and was insolvent before November 20 of that year, and likely was at the time of its incorporation which occurred on May 5, 1947.

James T. Broome, owner and manager of the original business, opened its first bank account of $2,000 in The South Carolina National Bank, Columbia, S. C., on January 31, 1947, under the trade name of Broome's Men's Shop. The origin of this opening deposit was a check for $2,000 drawn by Chas. F. Cooper on The First National Bank of Columbia, and payable to James T. Broome. Mr. Cooper testified that Broome, on that date, borrowed $1,000 from him to put into the business, that Broome gave him $1,000 in cash and he in turn gave Broome the $2,000 check which was deposited as aforestated. Cooper also testified that, while he gave his personal check to Broome for $2,000, the advancement of $1,000 was for the account of Mutual for which he, Cooper, acted in the matter.

Here Mr. Cooper's connection with the parties involved in this controversy should be stated, since he was involved in transactions that will be discussed below. He was at all relevant times an active executive and managing official of both Mutual and Perpetual, and he became the vice president, co-manager and attorney of the bankrupt at the time of its incorporation. He was authorized to and did, both before and after incorporation of Broome's Men's Shop, countersign its checks.

Mutual, acting through Cooper as in the case of the first loan, advanced two additional sums of money to Broome's Men's Shop, that is to say $1,000 on March 12, 1947, and $2,000 on April 11, 1947. To evidence this total indebtedness, so Mr. Cooper testified, James T. Broome gave Mutual a note in the sum of $4,000 on the 12th of March, 1947 (although the final $2,000 was not advanced until a month later) and secured it by a mortgage covering all the property and assets of Broome's Men's Shop of which Broome was the sole owner. This note and the mortgage securing it are in evidence. No revenue stamps were placed on the note and the mortgage has never been recorded.

On May 5, 1947, Broome's Men's Shop was incorporated under the laws of South Carolina. As a condition precedent to obtaining its charter from the Secretary of State, a declaration was filed with that official in which it was stated, among other things, that 50 per cent. of the proposed capital stock of $60,000 had been subscribed by bona fide subscribers thereto; that 20 per cent. of the amount subscribed had been paid to the treasurer of the corporation in money, property or labor; and that the subscribers had met and elected the following officers and directors of the corporation: James T. Broome, president, treasurer and director, B. M. Brazell (sometimes hereinafter referred to as Beatrice Brazell), secretary and director, and Guy V. Whitener and Douglas R. Broome, di-

rectors. However no record of any such meeting of the subscribers, held prior to the filing of declaration, has been found in the records of the corporation, nor has one been produced; and no stock subscription sheet or book has been found or produced. See Sec. 7728, Code of Laws of S.C.1942.

A paper was offered in evidence which purports to be the minutes of a meeting of the "Organizers and Stockholders of Broome's Men's Shop, Inc." held at 5 p. m. on the date the charter was issued and obviously after the declaration had been filed, and the charter issued. These minutes admittedly were dictated by Cooper some time during the succeeding month and were signed at some time thereafter, just when is not disclosed, by James T. Broome, president. The secretary of the corporation had no part in their making, nor did she sign them. In fact both Miss Brazell, secretary and director, and Guy V. Whitener, director, testified that they attended several corporation meetings prior to July 17, 1947, on which date the stock certificates were issued, but that at none of them was the below referred to Douglas R. Broome note and mortgage for $5,800 discussed or authorized. Thus the authenticity of the referred to minutes is brought into question.

Concerning the minutes of May 5, 1947 (the only minutes of any meeting that have been produced) it should be noted that they do not list the stockholders in attendance or show even an attempted compliance with section 7728, Code of Laws of S.C. 1942.

If the produced minutes, typed on a letterhead of Broome's Men's Shop, be accepted at face value, they show:

1. That the following persons were subscribers to the capital stock of the corporation in the amounts stated, to-wit: James T. Broome, $15,000; Douglas R. Broome, $7,500; Guy V. Whitener, $7,000; and Beatrice Brazell $1,000,—a total of $30,500.

2. That the corporation agreed to accept all of the properties of Broome's Men's Shop "at an agreed value of $15,000.00, subject to a note and mortgage to Mutual * * *, in the principal sum of $4,000.00."

3. That it was agreed that "the remaining $11,000.00 of said agreed value" should be disposed of by giving James T. Broome a credit of $5,200 on his stock subscription of $15,000 and by giving Douglas R. Broome $5,800 in cash or by giving him, or his designee, a note for that amount, bearing interest at the rate of 6% per annum, and secured by a mortgage of all the properties of the corporation, on the condition that Douglas R. Broome give his note to the corporation for $7,500, endorsed by Guy V. Whitener, in payment of Douglas R. Broome's stock subscription.

4. That Chas. F. Cooper was named vice president of the corporation and authorized to hold half of the stock subscribed by James T. Broome and to have "equal and joint control of the business", presumably with James T. Broome, president.

5. That Chas. F. Cooper, as attorney for the corporation, was authorized to prepare the by-laws and stock certificates of the corporation.

What the minutes failed to show is, the consideration of the $5,800 that was to be given Douglas R. Broome. The settlement of Douglas R. Broome's admitted stock subscription liability of $7,500 by his endorsed note was no valid consideration for giving him $5,800 in cash or in the form of a note and mortgage. This attempted maneuver, had it been successful, would have been equivalent to settling his stock liability of $7,500 for $1,700, or to selling him organizational stock in the corporation at less than 25% of its purported and represented par value. There is nothing in the minutes to show that the corporation owed Douglas R. Broome $5,800, nor is there anything aliunde the minutes that legitimately establishes the existence of such a debt. Certainly no competent proof has been offered to show that Douglas R. Broome had any financial stake in the business prior to its incorporation. James T. Broome held himself out as the owner of the business prior to its incorporation. Its letterheads contained the printed statement that James T. Broome was its owner; and James T. Broome mortgaged all of the properties of the business as his own to

Mutual only a short time before the incorporation.

James T. Broome subscribed to $15,000 of the capital stock of the corporation and the purported net value of the business at the time of incorporation lacked $4,000 of being enough to pay his stock subscription; and it hasn't been otherwise paid so far as the record discloses.

Assuming the stock subscriptions to have been as stated and the net worth of the business at the time of incorporation to have been $11,000, then the apparent purpose of incorporation and of stock subscriptions was to add $19,500 of cash operating capital to the business. What really happened was that James T. Broome never paid his stock subscription in full, but only a part of it, about one-third, on the basis of the assumed, but unverified, net worth of the private business before its incorporation, and his brother Douglas R. Broome indirectly received through Beatrice Brazell $5,800, which he apparently was not entitled to.

Another matter of significance is the fact that James T. Broome and Chas. F. Cooper, presuming to act for Broome's Men's Shop after its incorporation and without any recorded authority from the directors or stockholders of the corporation specifically so to do, unconditionally assigned the stock payment note of Douglas R. Broome in the amount of $7,500 to Perpetual; and Mr. Cooper, also acting on behalf of Perpetual, accepted the assignment without paying anything of value therefor to Broome's Men's Shop.

Moreover Beatrice Brazell was induced to give Perpetual a note for $5,800, secured by a mortgage of real estate; and like the other $5,800 note it bore date May 20, 1947, and was payable on demand. Now it is claimed, but not satisfactorily proven, that the three notes, aggregating $19,100— the larger one with a solvent endorser and each of the other two secured by a mortgage—were given for the same claimed obligation of $5,800.

It was the practice of Perpetual to issue a "Closing Statement" when it advanced money to a borrower. However, so far as the record shows, none was issued on the note and mortgage of Broome's Men's Shop to Perpetual for $5,800, which were executed by James T. Broome and Chas. F. Cooper, respectively, as its president and vice president, on May 20, 1947; nor was one issued on Douglas R. Broome's endorsed stock liability note for $7,500, which was assigned to Perpetual by the same officials of Broome's Men's Shop, and on the same date that the $5,800 note and mortgage were executed. However, a "Closing Statement" was issued on the Beatrice Brazell note and mortgage for $5,800, bearing the same date as the others. What the "Closing Statement" on the Brazell note and mortgage purports to show is this: (a) that the loan was closed May 20, 1947; (b) that the proceeds thereof were disposed of as follows:

| "To check for Douglas Broome | $ 853.07 |
| Legal fees | 58.00 |
| Stamps and recording fees | 4.32 |
| Other credits: check | 1000.00 |
| " | 3884.61 |
| Total | $5,800.00" |

Mr. Cooper testified that the only account carried on the books of Perpetual for the claimed sum of $5,800 was in the name of Beatrice Brazell as debtor. See p. 226 of his testimony. And since the entire proceeds were disbursed to her on her note and mortgage for that amount by Perpetual, it would appear that Perpetual parted with nothing for the $5,800 note of Broome's Men's Shop, in the execution of which Cooper participated while also acting for Perpetual, but on the contrary that Perpetual only held the Broome's Men's Shop note as additional security for the Brazell note.

Moreover there is nothing in the record, beyond the mere claim, that legitimately supports the conclusion that Broome's Men's Shop, either before or after incorporation, ever owed Douglas R. Broome anything; and knowledge of this lack of consideration for the note and mortgage of Broome's Men's Shop for $5,800 must be imputed to Perpetual, since Mr. Cooper acted for it in the acceptance of the note

102

and mortgage while also acting for Broome's Men's Shop in the execution thereof. The records of the bankrupt do not show that Douglas R. Broome ever put anything into the business, except his stock subscription note of $7,500 endorsed by Guy V. Whitener. Alfred Yost, the bookkeeper for the business, both before and after incorporation, testified that it was his understanding that the business was owned by James T. Broome prior to incorporation and that at no time during his employment from April, 1947, until January, 1948, did he know of any debt of the business to Douglas R. Broome or that there was an outstanding note and mortgage of Broome's Men's Shop for $5,800 given to Perpetual for the benefit of Douglas R. Broome, and further that no entry of any such obligation was ever made on the books of Broome's Men's Shop.

Mr. Cooper apparently knew as much about the business of Broome's Men's Shop as did anyone, except in the field of actual sales of goods over the counter, both before and after its incorporation. He personally handled transactions out of which arose four-fifths of the capital originally put into the business as a business adventure of James T. Broome, although he acted for Mutual in that behalf. He countersigned all checks for the business (none of which have been produced or found in the records), both before and after incorporation, until about the time of the belated recordation of the mentioned mortgages. He acted as attorney for the corporation in procuring its charter and knew that section 7728 of the S. C. Code of Laws, above cited, had not been complied with. He acted throughout in a dual capacity, not only for Mutual and Perpetual, but also as vice president, co-manager and attorney for Broome's Men's Shop. And he also knew that $19,500 of new capital was not being put into the business at the time of incorporation, as apparently contemplated, but on the contrary that the resources of the business would be depleted by the amount of the note and mortgage given to Perpetual ostensibly for the benefit of Douglas R. Broome.

Upon consideration of the whole record it is concluded that the note for $5,800 given by Broome's Men's Shop to Perpetual lacked a valuable consideration and that Perpetual was chargeable with notice thereof at the time it accepted said note. Hence it follows as a matter of law that Perpetual can take nothing thereby and that its claim based thereon should be disallowed. Accordingly, it is

Ordered, That said claim be disallowed by the Referee and that in all other respects the Referee's referred to order be affirmed and made the order of this Court.